UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**KRISTOPHER PEDERSEN**     **CASE NO. 3:22-CV-05429**

**VERSUS**     **JUDGE TERRY A. DOUGHTY**

**STATE FARM FIRE & CASUALTY CO. ET AL.**     **MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT & RECOMMENDATION**

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. #12], filed by Plaintiff Kristopher Pedersen ("Plaintiff"). The motion is opposed. [doc. #15]. For reasons assigned below, it is recommended that the motion to remand be DENIED.

**Background**

Plaintiff filed the instant action on August 24, 2022, against Defendants State Farm Fire and Casualty Insurance Company ("State Farm'); Peggy Sullivan Insurance and Financial Services ("Peggy Sullivan Insurance"); and Margaret N. Sullivan. [doc. #1-1, p. 2[1]]. The suit arises from an insurance dispute following property damage incurred by Plaintiff during Hurricane Laura. *Id.* Plaintiff alleges that he owns property in Bastrop, Louisiana, which, beginning on November 7, 2017, was insured by State Farm against perils, including hurricanes.[2] *Id.* The Policy, purchased

---

[1] The page numbers cited by the Court refer to the page numbers assigned by the Court's electronic filing system on the top of the document.

[2] Plaintiff allegedly reached out to insurance agent Peggy Sullivan in November 2017, asking to purchase coverage. [doc. #15, p. 5]. Sullivan advised that State Farm could provide a policy with certain specific coverages, including an Other Losses Deductible of .05% ($1,000) and a hurricane deductible of 5% ($4,240). *Id.* Pederson decided to purchase that coverage and asked Sullivan to procure it, which she did. *Id.*

by Plaintiff through Peggy Sullivan Insurance, provided the following coverages: $107,000 for Dwelling; $10,700 for Other Structures; $80,250 for Personal Property; and $32,000 for Loss of Use. [doc. #15, p. 5–6]. The Policy was for a one-year period and was renewed by Plaintiff in November 2018, November 2019, and November 2020.[3] *Id.* Plaintiff argues that Peggy Sullivan Insurance and insurance agent Margaret Sullivan (the "Agent Defendants") negligently failed to ensure that Plaintiff had adequate insurance coverage. [doc. #12-1, p. 6].

On August 26, 2020, Hurricane Laura allegedly caused significant damage to Plaintiff's property, including the destruction of several items of valuable personal property. [doc. #1-1, p. 3]. Plaintiff reported the damage to State Farm, who assigned him a claim number. Around September 2020, State Farm inspected the property and documented approximately $6,800 in damages to the dwelling and other structures but denied the claim in its entirety after over-depreciating the loss and applying the Policy deductible. [doc. #12-1, p. 5]. State Farm made payments to Plaintiff under the Policy for personal property and depreciation. *Id.* Plaintiff was unsatisfied with the amount that he received and filed the instant suit. *Id.*

On October 3, 2022, Defendants removed the matter to federal court, arguing that the Agent Defendants were improperly joined, and their citizenship should be ignored for the purposes of determining diversity subject matter jurisdiction. *Id.*

---

[3] Plaintiff did not elect any changes in coverage during those years. *Id.* Thus, the only changes reflected on the declaration sheets for those renewal years were changes in the coverage for the dwelling amount which occurred automatically with each renewal. After Hurricane Laura, for the coverage year that began on November 7, 2021, Plaintiff elected to change his hurricane deductible from 5% to 2%. [doc. #15-1, p. 2 & p. 2 n.8]. However, the 2021 policy is not at issue in this lawsuit.

On November 1, 2022, Plaintiff filed the instant motion to remand, arguing that he and the Agent Defendants are citizens of Louisiana, and, as such, complete diversity does not exist, and the case should be remanded to state court. [doc. #12-1, p. 6–7].

On November 22, 2022, Defendant State Farm filed their opposition. [doc. #15]. Therein, it argues that Plaintiff does not state a claim against the Agent Defendants because they fulfilled their statutory duty under Louisiana law, and, even if they had not done so, any claim against them is time-barred. *Id.* at 7.

On November 29, 2022, Plaintiff filed his reply. [doc. #16]. Therein, he argues that the case law cited by State Farm is not applicable to Plaintiff because he is a homeowner with limited knowledge of insurance matters. *Id.* at 2. Thus, according to Plaintiff, the Agent Defendants were properly joined, and the court lacks diversity subject matter jurisdiction. *Id.* at 2–3.

Accordingly, this matter is ripe.

## **Analysis**

A civil action brought in state court may be removed to the federal district court where such action is pending if the district court has original jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden to show that federal jurisdiction is proper. *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009). Because removal raises significant federalism concerns, removal is strictly construed, and any doubt about the propriety of removal jurisdiction is resolved in favor of remand. *Certified Pressure Testing, LLC v. Markel Am. Ins. Co.*, No. 3:20-cv-2783-S, 2021 WL 674124, at *2 (N.D. Tex. Feb. 21, 2021) (citing *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007)). "The two principal bases upon which a district court may exercise removal jurisdiction are: (1) the existence of a federal

3

question, *see* 28 U.S.C. § 1331; and (2) complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332." *Id.*

When, as here, defendants remove the suit on the basis of diversity, the removing party must establish by a preponderance of the evidence that: (1) the amount in controversy exceeds $75,000; and (2) all persons on one side of the controversy are citizens of different states than all persons on the other side of the controversy. *Id.* (quoting *Frye v. Aanadarko Petr. Corp.*, 953 F.3d 285, 293 (5th Cir. 2019)).

Defendant State Farm argues that the non-diverse Defendants were improperly joined. "Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). State Farm does not contest that the Agent Defendants are citizens of Louisiana. Thus, the Court will consider the second test.

In considering the inability of the plaintiff to establish a cause action against the non-diverse party in state court, the Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). "This means there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "Nonetheless, the burden of persuasion on those claiming fraudulent joinder remains a heavy one." *Id.*

The standard for resolving a Rule 12(b)(6) challenge and determining improper joinder are similar. *Northgate Plaza, LLC v. Safepoint Ins. Co.*, No. 2:22-cv-05420, 2022 WL 17254937, at *1 (W.D. La. Nov. 28, 2022) (citing *Ross*, F.3d at 462). The scope of inquiry for fraudulent joinder

4

is broader than that for Rule 12(b)(6) because for an improper joinder analysis the court's review is not limited to the pleadings. *Id*. The court may "pierce the pleadings" and consider summary judgment-type evidence. *Id.* at 463 (citing *Travis*, 326 F.3d at 648–49).

In his motion to remand, Plaintiff argues that diversity jurisdiction did not exist at the time of removal because Plaintiff and the Agent Defendants are all citizens of Louisiana. [doc. #12-1, pp. 7–8]. Also, Plaintiff argues that he has stated a cause of action against the Agent Defendants for failure to use reasonable diligence in procuring insurance, and, therefore, the Agent Defendants are not improperly joined. *Id.* at 9.

In their opposition, Defendants advance two arguments as to improper joinder: one, that under Louisiana law, the only duty imposed on an insurance agent is to procure the specific coverage requested by the customer, and, here, it is undisputed that the Agent Defendants procured the specific coverage requested by Plaintiff; and two, that any claim Plaintiff might bring against the Agent Defendants is time-barred under Louisiana law, which provides a one-year peremptive period to sue an insurance agent. [doc. #15, p. 8].

In his reply, Plaintiff argues that Defendants' failure to file a motion to dismiss the claims against the Agent Defendants indicates they are aware that all facts pled, assumed true, would prove liability. [doc. #16, p. 1]. Moreover, Plaintiff argues that the case law cited by Defendants in their opposition is not applicable to a homeowner with limited knowledge of insurance matters. *Id.* at 2.

Louisiana Revised Statute 9:5606 provides a one-year and three-year peremptive period for claims against insurance agents:

> (A) No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within

5

> one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> (D) The one-year and three-year periods of limitation provided in Subsection A of this section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

Actual or constructive notice is sufficient to trigger the peremptive period. *See Nungesser v. New York Life Ins. & Annuity Corp.*, No. CIV. A. 08-3964, 2009 WL 2707441, at *3 (E.D. La. Aug. 25, 2009); *Calcasieu Cameron Fair Ass'n v. Markel Intern. Ins. Co.*, No. 2:07-cv-1999, 2008 WL 2148460, at *3 (W.D. La. May 21, 2008). Constructive knowledge is "information or knowledge that ought to excite attention and put the alleged victim on guard . . . knowledge of policy terms that directly contradict a statement by the agent who sold the policy is sufficient to excite attention and put the insured on guard." *Calcasieu Cameron Fair Ass'n,* 2008 WL 2148460 at *3 (quoting *Dobson v. Allstate Ins. Co.*, No. 6-0252, 2006 WL 2078423, at *9 (W.D. La. May 21, 2008)). "Moreover, a policyholder is responsible for reading his or her policy and is 'presumed to know its provisions.'" *Id.* (quoting *Dobson*, 2006 WL 2078423, at *9). "A plaintiff's claim is therefore perempted if it is not brought within one year of constructive or actual notice of the act, omission, or neglect, or within three years of the alleged act, omission, or neglect." *Id.*

Thus, the Court must determine whether Plaintiff had constructive notice sufficient to trigger the peremptive period, and, if so, when. Plaintiff argues that he first had constructive notice in late August or early September 2021, when he received State Farm's revised estimate. [doc. #12-1, p. 15]. Defendants, on the other hand, argue that Plaintiff had constructive notice in November 2017 when he purchased the Policy. [doc. #15, pp. 14–15].

6

Importantly, the source of the alleged "acts, omissions, or neglect" that gives rise to Plaintiff's claim against the Agent Defendants, is the Policy purchased in November 2017 and renewed in November 2018 and November 2019.[4] In his complaint, Plaintiff alleges that "at the time Petitioner purchased the Policy, Peggy Sullivan failed to advise [Plaintiff] of the appropriate coverage options for the property." [doc. #1-1, p. 4].[5]

Under Louisiana law, "it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *McKernan v. ABC Ins. Co.*, 328 So.3d 69 (La. 2021). Thus, Plaintiff was on notice as to any deficiencies in his coverage at the time he purchased the policy in November 2017, thereby triggering the peremptive period. *See Northgate Plaza, LLC*, 2022 WL 17254937, at *1 (peremptive period commenced with the purchase of the insurance policy); *Dobson*, 2006 WL 2078423, at *9 (insurance agent's alleged misrepresentations occurred when the policy was purchased, commencing the peremptive period).

That the Policy was renewed in November 2018 and November 2019 is of no help to Plaintiff. "Generally, subsequent renewals of insurance policies do not operate to restart peremption." *Rowe v. Primerica Life Co.*, No. 19-863-SDD-SDJ, 2020 WL 5658201, at *5 (E.D. La. Sept. 23, 2020) (quoting *White v. Allstate Ins. Co.*, 513 F. Supp. 2d 674, 681 (E.D. La. June 26, 2007)). "In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent

---

[4] The Policy was renewed twice more, in November 2020 (without change) and November 2021 (with a change to the deductible amount). When Hurricane Laura struck in August 2020, the latest renewal was in November 2019.

[5] In his state court complaint, Plaintiff asserts negligence and breach of fiduciary duty claims against the Agent Defendants. [doc. #1-1, p. 6]. All of Plaintiff's allegations against the Agent Defendants arise from their alleged negligence to procure sufficient coverage when Plaintiff purchased the Policy.

7

damages." *Id.* (quoting *Biggers v. Allstate Ins. Co.*, 04-282 (La. App. 5 Cir. 10/26/04), 886 So.2d 1179, 1182); *see also Sonnier v. La. Farm Bureau Mut. Ins. Co.*, 2005-1006 (La. App. 3 Cir. 3/1/06), 924 So.2d 419, 422, *writ denied*, 2006-0704 (La. 5/26/06), 930 So. 2d 33 (a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal). "The inquiry is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement." *Id.* (quoting *White*, 513 F.Supp.2d at 681).

Here, Plaintiff's complaint does contain any factual allegations referencing the Policy renewals in November 2018 or November 2019. In his Motion to Remand, Plaintiff alleges that each year, when he would renew his policy, he would "call the Agency and speak to one of Peggy Sullivan's employees to inquire whether he had sufficient coverage on his home, including the barn and personal property. Each year, Plaintiff was told in response that his coverage looked 'fine.'" [doc. #12-1, p. 12]. This, however, does not constitute an allegation that the renewal was a separate act from the initial policy procurement. *See Rowe,* 2020 WL 5658201, at *6 (Plaintiff's allegation that he spoke with insurance agent throughout the years about automatic renewal did not rise to the level of alleging a separate act). Moreover, Defendants produced an affidavit from Peggy Sullivan stating that Plaintiff's coverage "remained the same from November 7, 2017, through November 6, 2021, except for increases in coverage limits due to the inflation coverage index." [doc. #15-1, p. 3]. Sullivan also testified that "the renewal notices containing premium information and declarations as to coverage were mailed by State Farm to [Plaintiff] before the policy renewed each year." *Id.* Consequently, even if the November 2019 renewal constituted a "separate act," Plaintiff was on notice as to any negligence when he renewed the policy—*see Dobson*, 2006 WL 2078423, at *9 (insurance agent's alleged misrepresentations occurred when

8

the policy was purchased, commencing the peremptive period)—meaning in that scenario, any claim against the Agent Defendants was perempted one year later, in November 2020.

In short, Plaintiff's claims against the Agent Defendants are perempted in any scenario. Thus, Plaintiff has no reasonable probability of recovery against the Agent Defendants, and the Agent Defendants' presence must be disregarded for purposes of subject matter and removal jurisdiction. *See Finton v. Blackford*, No. 3-21-03586, 2022 WL 611581, at *8 (W.D. La. Feb. 14, 2022) (improperly joined defendant's presence disregarded for subject matter and removal jurisdiction) (citing *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x. 62 (5th Cir. 2010)). The remaining parties are completely diverse, with no forum-domiciled defendant. Accordingly, the Court may exercise subject matter and removal jurisdiction. 28 U.S.C. §§ 1332 and 1441. Therefore, Plaintiff's motion to remand should be denied.

Having determined that Plaintiff improperly joined the Agent Defendants, the Court lacks jurisdiction to entertain the claims against the Agent Defendants, thereby requiring their dismissal, without prejudice. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., LLC*, 818 F.3d 193, 209–211 (5th Cir. 2016) ("[T]he dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal without prejudice in every instance."). Thus, Plaintiff's claims against the Agent Defendants should be dismissed, without prejudice.

## Conclusion

For the assigned reasons,

**IT IS RECOMMENDED** that Plaintiff's motion to remand [doc. #12], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Defendants Margaret Sullivan and Peggy Sullivan Insurance be **DISMISSED WITHOUT PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling. **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 9th day of January, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE